All right, so we have this one case this morning, and I think there's some students here or lawyers. But would both the attorneys that are going to argue please step up to this podium and identify yourselves for the record? Good morning. Manuela Hernandez from the Office of the State Appellate Defender for Mr. Tacky Peacock. Good morning, your honors. My name is Myles Kelleher from the Cook County State's Attorney's Office. All right. Each of you will have about 15 minutes to present oral argument. And from that, Ms. Hernandez, you may save out some time for rebuttal. So why don't you step up and begin. Thank you. And I would like to reserve four minutes for rebuttal. Certainly. May it please the Court. Counsel. Tacky Peacock, who is now 41 years old, was sentenced to an 80-year prison sentence when he was only 17 years old for first-degree murder under unaccountability theory. He asked the Circuit Court for leave to file a successive post-conviction petition, claiming that his sentence violates both the Eighth Amendment of the U.S. Constitution and the Constitution of the United States. And he was sentenced to four years in prison. The Court has now ruled that Mr. Peacock's sentence violates all of the provisions of the U.S. Constitution and the proportionate penalties clause of the Illinois Constitution. Obviously, his request for a leave was denied and he's now asking this Court to reverse the Circuit Court's decision. Because his request has shown that there is cause and that there is prejudice as is required for successive post-conviction petition. And even if, before we get to the real issue about what this four-year sentence is, we recently held in another case which you cited that cause and prejudice was established in that case where the sentence was 50, but it was an interpretation of the buffer decision. That is correct, Your Honor. Recently in People v. House, this Court held that there was cause and prejudice and the State does not dispute that there is cause in this case. So what the State disputes is whether there is prejudice. And I would first like to address the question of the Eighth Amendment. The State does not contend that the Court failed, oh, that the Court didn't fail or that the Court considered what we now refer to as the Miller factors when sentencing Mr. Peacock, Tacky Peacock. What the issue is here is whether his sentence, his 80-year sentence, which was imposed before truth in sentencing and is to be served with day-for-day credit, constitutes a de facto natural life sentence for a juvenile, and it does. You suggest in your brief that the language in buffer somehow doesn't really match what the Court concluded. Why don't you explain that a bit? Yes, Your Honor. So what the Supreme Court did in buffer was rely on what the legislature now considers to be a natural life sentence for a juvenile. Well, that's what the Supreme Court concluded. They said that they were going to look at the legislature and they said that it was their opinion that the legislature had determined that what would be mandatory life for an adult would be at a minimum, which is what the language of the statute is, 40 years. So essentially, those two are supposed to be equal, right? Yes. I mean, I think that that is... That 40 as a minimum is the same as mandatory life for an adult. Yes, Your Honor. I believe that if you follow that logic, that would, the conclusion, the logical conclusion here is that a 40-year sentence is the equivalent of a natural life sentence for an adult. And I think that this Court reached the same conclusion in People v. House when it stated that a 40-year sentence is long enough to be a de facto natural life sentence. Well, the language of the statute actually requires that if a person who's under 18 should commit murder of a police officer, that at sentencing, that the Court shall impose a minimum of 40 years. Yes, that is correct, Your Honor. So if we're looking at what the legislature is telling us is the equivalent of a natural life sentence for a juvenile, what we, the answer to that question is at a minimum 40 years. Right. So 40 years under the buffer analysis would constitute a de facto natural life sentence. Here, Taki's sentence was 80 years. With day-for-day credit, it would be a minimum, at the very least, 40 years, which would then constitute a de facto natural life sentence. There's no guarantee of any day-for-day credit. Day-for-day is if you're on good behavior, you don't pick up any tickets. There's no guarantee. And in fact, the minimus doesn't even say that he's going to get 40 years, right? That is correct. His sentence is 80 years. It's if everything breaks his way. Well, if everything breaks his way, the minimum that he would be serving in prison would be 40 years. But we, obviously, not everything is going to break his way, or we cannot guarantee that everything is going to break his way. In fact, it's very easy to lose day-for-day credit, and it's, and you can lose day-for-day credit at the discretion of the Director of the Department of Corrections, which means that it is. Well, then the courts really have no impact at all in sentencing, which is kind of like, I don't know that that's really something we should ever concern ourselves with, whether some other department should have any influence whatsoever over an actual sentence. Because at the end of the day, it's the court or the judge that sentenced that person. And in this case, the judge sentenced him to 80 plus the 30, 30, and 30 concurrent with that 80. That is correct. So I think that our concern here, and I think that what the court in Buffer did, was we are going to think about what the sentence is. The court rejected the analysis of looking at what the expected date for release is for the defendant, and instead said, let's look at the sentence. And I think if we look at the sentence here, what the judge actually imposed is 80 years. Well, you know, interestingly about this case is that when the briefs were initially filed, his outdate was exactly 40 years. That was according to the records. And then, I think since the state filed its brief, somehow he was given 15 days of good time credit, correct? Well, Your Honor, I did see that change. It's showing that somehow he got some credit recently. I'm not sure how that happened. But then that would actually take this case out of the 40 years, wouldn't it, if we relied on that? Well, I would say no. All right. Because I think that this court should focus on the sentence that was imposed, which was 80 years. Yes. But And not, but even, I'm sorry, Your Honor, to interrupt you, but No, it's just that the idea that it could change means it could change another way as well. That is correct, and that's what I was So should we really be concerning ourselves with the Department of Corrections that has apparently the power to change sentences and then enhance them? Is that the kind of thing that the court should rely on when we're interpreting something so significant as a possible life sentence for a offender or an offender? That's right, Your Honor. I think that the fact that today we do not know when Tacky will be released from prison or what his sentence will actually be means that looking at this date on the Department of Correction websites is not workable when we're thinking about a bright line rule that was established by People v. Buffer. Was there really a bright line rule established when on the one hand the court said we're going to look at what the legislature determined, they said that at a minimum a life sentence would be 40 years, and then later they say we're going to the floor, and so 40 years and less is not a de facto life. Well, certainly it's not so bright. It is ambiguous, but it's safe to say that it's around the 40-year mark, whether it's 40 years or less that it's allowed or 40 years is actually included in what we consider to be a de facto natural life sentence. And your argument is basically that we shouldn't have this whole case hinge on this maybe 40, maybe 40 or less. And Tacky Peacock has almost 20 years left of this sentence at the very least, and so we know that the Department of Corrections somehow changed the date to an earlier date recently. We don't know what's going to happen in the next 20 years. So as Your Honor said, it would be very difficult to focus on what the Department of Corrections will or will not do with respect to the sentence in order to determine that in fact there is a possibility that he is going to be serving a nonconstitutional sentence. I have a question. So with regards to the cause and prejudice test that's laid out in buffer, and we have this issue with regards to the day-to-day, doesn't that kind of put that into play of whether or not there really is prejudice here? Well, Your Honor, it used to be that the analysis that was made would consider what percentage of the sentence the defendant was going to serve in order to make this determination about whether the defendant is going to have a meaningful opportunity for release and whether he's going to survive his sentence. So the courts were looking at life expectancy in order to make those determinations, but I think that the court in buffer changed that analysis completely and is asking us to focus on the sentence that was imposed and not on, well, what age is this person going to be released and is this going to be a geriatric release that's not going to provide meaningful opportunity for him to be a successful member of society. Wait, 57 is geriatric now? Nobody told me that. Was that in your brief? Well, I don't mean to offend you, Your Honor. I'm really geriatric. I passed 57 a while ago, unfortunately, but we're all heading there. More, more, we hope. And even if this court were to consider his day-for-day credit, I think that under the circumstances of this case, this court should also consider the three-year mandatory supervised release as part of his sentence. One, because the Supreme Court has said that in the context of post-conviction, the context of the Post-Conviction Act, that three-year mandatory release is part of the sentence. The defendant is still in custody and under the supervision of the Department of Corrections. But also because if he violates any terms of his mandatory supervised release, even if he got out exactly after 40 years, he would then be serving a non-constitutional sentence. So I think that another way to look at this case, if Your Honors decide to consider the day-for-day credit, is to think about it not as a 40-year sentence, but at least a 43-year sentence. And I think it's also important to note that the rules of the Department of Correction, some of them are very minor. You can be violated for very minor infractions, and so the fact that you have been violated really does not reflect on your rehabilitative potential. So because his sentence is a de facto natural life sentence, and because the court failed to consider the Miller factors, his sentence does violate the Eighth Amendment. So I am going to move on now to the argument that his sentence also violates the Proportionate Penalty Clause of the Illinois Constitution. Now his 80-year sentence shocks the moral sense of the community. Because if we think about what the buffer court has now told us, a natural life sentence is for a juvenile. In this case, he was sentenced to a maximum sentence without consideration of his youth, the attendant characteristics of his youth, and importantly, it was not fashioned with the objective to restore him to his former life. It was not fashioned with the objective to restore him to useful citizenship. Was the 80 at the time the maximum for him? No, the maximum was natural life. Yes, that's what I thought. Yes. But now we know that he was actually sentenced to a natural life sentence for a juvenile. And this was done without consideration of all of these factors. Now the state is right that the court did consider the seriousness of the offense. And indeed, this was a serious offense. The victim died. But what the court said during sentencing is very telling. The court said that it was considering the factors in aggravation and mitigation, and it did not mention Tacky's age, which is 17. The court mentioned that he had free will, and that he had made this choice, and that he had to take responsibility for the conduct during the course of this whole incident. These are the words of the court, even though the actual shooter was his co-defendant, who was eight years his senior. And I think that this deviates with what we now understand is the mind of a 17-year-old boy. A 17-year-old boy. A 17-year-old boy has diminished culpability, has lack of maturity, has an undeveloped sense of responsibility, has limited control of his environment, and has an inability to extricate himself from a crime-producing environment. Well, what about the possibility of rehabilitation? I mean, is that the... Well, the court did not consider his potential for rehabilitation, which obviously his age has a lot to do with. In mitigation, the court only considered two things. The court considered that he didn't have a criminal record, and that his crime was facilitated by someone else, because he was convicted under an accountability theory. And it didn't take into consideration, obviously, his age and, you know, everything that we now know about brain development. Are you saying the court never mentioned the fact that he was 17? Correct. During sentencing, the court was informed that he was 17 years old. But the court said, I'm going to go through aggravating factors, I'm going to go through mitigating factors, and never once mentioned, you know, this is a 17-year-old. And, you know, there were other factors that the court didn't consider. For example, that he was, he had a substance abuse problem since the age of 12. Importantly, that his co-defendant was 25 years old, was eight years his senior. And if you read Taki's confession to the police carefully, you will see that, in fact, a lot of the acts that he committed were at the direction of the 25-year-old adult. And also, that in his confession, Taki states that their, his intent at that point, how this crime began, it was a robbery. They were going to take this person's car, the victim's car. Well, I don't know about my other two family members, but I've been with this case since it arrived here, you know, some 20 years ago. Oh, okay. Yes, yeah, yeah. So we are familiar with the facts. There was certainly, you know, a finding by the court, though, in this case, the trial judge, that the facts were exceptionally brutal and heinous. And there was information available that, you know, Taki Peacock fired the weapon, although it didn't function. And that the day before, he had retrieved a gun from his sister. I mean, there were some aggravating factors, certainly. Yes, and I'm not going to deny that Taki has no faults or, you know, that this is not a serious offense. But I think that his behavior in this case is very linked to his age. And we can see that in his confession when he's telling the police that he didn't know that they were going to kill this man. He realized that they were going to kill this man while they were on their way to this forest preserve. That he wasn't the one who fired the first shot that killed the victim. That he was directed by his co-defendant to fire the gun, and it actually didn't hit the victim. So these are all mitigating factors, and these are circumstances that are surrounding this offense that were not considered by the court when it imposed what we now know is a maximum sentence for a juvenile. We know that our understanding of what shocks the conscience or what is fair and just in sentencing has evolved. Now we require courts to consider all of these factors when sentencing a juvenile. Numerous factors that have to do with the juvenile's age. We now know, well, our laws has changed so that somebody who has committed an offense under the age of 21, can now be paroled after 20 years, is eligible for parole. So I think that... Should this person have to wait for another 20 years to see if he ends up doing 40 or not? No, Your Honor, especially because we wouldn't know until he has completed a non-constitutional sentence. I mean, I think that that would be completely unworkable for him to say, oh, well, it's past 40. Oh, I didn't get released today, let me file something. Yes, or let me file something that then it's going to go to the court. Mr. Hernandez, do you believe that if this were returned for sentencing that he would have the benefit of the, you know, sentencing changes that have taken effect since he was convicted years ago? I am not 100 percent sure, Your Honor, with respect to that question, but I would believe so. Well, just curious, one of the newer provisions would allow for a parole hearing, if nothing else, after I think it's 25 years, since he's already done 20. But I was just curious, I think if something is remanded, the individual has the right to be sentenced under new sentencing laws, if they are more favorable to him or her, as opposed to what was in place when he was originally sentenced. Yes, it would be a new sentencing date and a new sentencing order. So he would potentially get the benefit of that. Well, we're going to give you some time for rebuttal. Is there anything else you'd like to add at this time? No, just that this Court reversed the Circuit Court's decision to deny him leave to file his successive post-conviction petition. Thank you. All right. Mr. Kelleher, we're going to have some questions for you, sir. You know, I'd like to start out with your interpretation of the Buffer decision. Sure. May it please the Court, Counsel? Is there a little confusion there? The Buffer decision, they decided to draw a line. They didn't have to draw the line, and not everyone's happy about where they draw the line. Well, regardless of whether they're happy or not, we're bound by that line, are we not? Yes, Your Honor. But is there a line? Is there really a line? Well, the Court held that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a de facto life sentence in violation of the Eighth Amendment. So we certainly know that anything under 40 years is not a de facto life sentence, and we certainly know that a sentence where a defendant is eligible for release at 40 years is not a de facto life sentence, whether a sentence over 40 years is another. Let's talk about the legislative language that they relied on in Buffer. Doesn't that provide or suggest that a life sentence for an adult is equated with the sentence imposed for a youthful offender who kills a police officer in the line of duty? Didn't they say that? They were going to look at the legislative enactment? They looked at the new sentencing statute for guidance. Okay. But ultimately that was not... Well, didn't they say in so many words that the sentence that's mandatory for a person under 18 who would shoot a police officer in the line of duty, that that sentence is the same as a mandatory life sentence for an adult who would commit the same crime? The court interpreted the General Assembly as feeling that if they could impose a mandatory sentence of 40 years for a juvenile that commits a certain category of murders, then it would be the General Assembly's opinion that that does not constitute a de facto life sentence, and it could be a life sentence. Yeah, how did they reach that conclusion? Well, the Supreme Court used that as guidance. Let's forget about that case. If an offender has been found guilty of killing a police officer in the line of duty, there is an actual sentence that the court is required to impose. Isn't that correct? Yes, that's correct. And isn't that sentence a minimum of 40 years? That's correct. So if you actually compared mandatory life to a minimum of 40 years, they would be essentially the same, right? A minimum 40 and mandatory life for an adult. They're equated equally under this legislative enactment, aren't they? I'm not talking about the offender. I'm just asking your opinion. How would a judge interpret that? Would that permit a judge to give a sentence of less than 40? Or is the court required to give a minimum of 40 years after a conviction under those facts? My understanding of the new statute is that a judge shall impose a minimum of 40 years. That's what the language is. Yes, if the juvenile commits an offense that meets one of the criteria that's set forth in the new statute. So under my scenario, does the judge have to give a minimum of 40 years or not if that person is found guilty of committing that offense? Under the new statute, yes. I'm just asking about the statute. That's a different situation from what happened in the case at Barr. This was a discretionary sentence where the judge could have given a sentence up to natural life. And the judge could have given a lower sentence. Offer said that when we're talking about mandatory life, it's either mandatory or discretionary, actual or de facto. So I'm not sure that that makes too much sense to try to suggest that this isn't a mandatory life sentence. Buffer makes it quite clear that anything 40 and under is not. Yes, the holding is unambiguous. It's plain. It's obvious. And yes, some people might wonder, well, how did the Supreme Court arrive at that conclusion? But nevertheless, that's the conclusion. That's the holding that they arrived at, and it controls this case. He got an 80-year sentence. He got an 80-year sentence. However, he committed the offense in 1995. As a result, he is eligible for day-for-day good conduct credit. He is eligible, right? That's correct. Right, eligible. He doesn't have it. That's correct. However, when judges sentence defendants, they take into account the eligibility for good-time credit. But that eligibility could change. He gets a ticket in jail. That changes. There's a multitude of things that he could lose day-for-day with. So are we supposed to calculate the sentence that was given, along with you get time off if you get a GED. You get time off if you're in AA. You get time off if you do a multitude of things in jail. So are we supposed to factor in all those possibilities to get our number under 40? That's kind of what you're asking us to do, isn't it? No, Your Honor. When reviewing Miller claims, courts consider the earliest possible release date. You're relying on some cases, but Buffer didn't do that. Right now, if you look at the current IDOC projected release date, it is 15 days lower than a 40-year term. But let's say it was exactly at 40. Yeah, let's say it was. If it was exactly at 40. So does that mean 40 years and 1 minute? Well, we know that in the case of Patterson, the Illinois Supreme Court, in considering whether the defendant's sentence was a de facto life sentence, he was sentenced to a total of 36 years. But the Illinois Supreme Court considered the fact that he was required to serve at least 85 percent. So they actually looked at the 30 years and 7 months. And other cases from the Illinois, or the 1st District, in Evans and Lopez, they've also considered that the defendant was eligible for certain types of good time credit. And they considered the earliest possible release date. Now, yes, there is some... Can I interrupt you for a second? Are criminal – would you consider this a penal statute, the 80-year sentence? Is this a criminal or penal statute? You know, where the court imposes a sentence under the criminal statute. Is that a criminal or penal statute? I believe so. All right. Yes, but when the sentence is made, the court – the sentencing court was well aware that when he imposed his sentence that the defendant would be entitled for day-for-day good time credit. Only if he behaves. Only if he picks up no tickets. He can't project that for the next 40 years nothing is going to happen in jail to jeopardize that day-for-day credit. But that is in defendant's control. He has control over his behavior, and right now he's doing everything that he should be doing, and there's no reason to believe that he is not going to continue getting his credit. And if for some reason the IDOC miscalculated his projected release date, he has a remedy. He could file a petition for habeas corpus release. Is it your position that this person should wait for 20 years to see if he's entitled to a new sentencing hearing? Yes, because this case occurred in 1995. We're not in 1995 anymore, and things have changed dramatically since then. And we didn't have Miller back in 1995. So Roper, Graham, I mean, what do you mean? We're talking about 2019, and a person that's already served more than 20 years, and you're saying he should wait for another 20 to see if he could get a new sentencing hearing? Because this case is on the very line? Because the first step in the Miller analysis is whether or not the defendant was sentenced to life or de facto life sentence, and under the recent case of Buffer, we know that a defendant who is eligible for release after serving 40 years, even though it's close to the line, maybe exactly on the line, the Illinois Supreme Court unambiguously stated that a 40-year sentence is not... Did you say unambiguously? Yes. You don't think there's any ambiguity in that decision, Mr. Kelleher? In a case like this, no, because they stated 40 years or less is not a de facto life sentence. And they held... They were also drawing the line at 40, and they were relying on a statute that has clearly equated a minimum of 40 years with natural life for an adult. But they held that a prison sentence of 40 years or less imposed on a juvenile provides some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. So should we take a chance with this case because you say he's going to, you know, do less than 40, or should we send it back, have a sentencing hearing, let him have a judge determine whether or not this is the sentence that he should get today? Well, the Illinois Supreme Court has spoken on this. No, they haven't had this case in front of them. They had a 50-year sentence. Everybody asked the court to maybe pick that number. They chose another number. They based it on a legislative enactment that requires a minimum of 40 years. So this is not the case that was before them. This is the case of someone either on the line or over the line and whether or not we should wait for 20 years to see if he should get a new sentencing hearing under your argument. Well, first of all, the defendant was not sentenced under the new juvenile sentencing statute, and it's not, it doesn't retroactively apply to a case that occurred in 1995. Now, I'm not talking about that. I'm talking about the 80-year sentence that was imposed. Under that, if he gets day for day, he will serve 40 years. If there's any little problem along the way, he'll maybe do over 40. In this case, it's our position that he was not sentenced to a de facto life sentence under Buffer. However, in the event that somehow this was interpreted as a de facto life sentence under Holman, you can look at the cold record and look at the sentencing hearing. And in this case, if you look at the sentencing hearing, the sentencing court did everything required by Miller. It's a lengthy sentencing hearing. It's 60 pages approximately in length, and the court considered the pretrial investigation report. The court considered all the aggravation, all the litigation. I'm going to ask you for a second. What about counsel's argument that the age was not a factor in the sentencing hearing, that the judge did not, at least on the record, state that the age of the defendant? Your Honor, when you look at the sentencing hearing as a whole, the judge was well aware of the defendant's age, that he was 17 years old. And we know that because the defendant's cousin testified at the sentencing hearing. The defendant's mother testified at the sentencing hearing. The defendant's father testified at the sentencing hearing. And during their testimony, these are three people who knew the defendant the best. They talked about his childhood. They talked about his teenage years. And for the most part, they spoke about his years in a positive sense, and even defended. He stated in the presentence investigation that there was no child neglect, no abuse. Yes, he did have some issues with substance abuse. If we're going to take into account this day for day, why shouldn't we take into account mandatory supervisory release as part of the sentence? Because every judge knows that when they sentence someone to murder, they're going to have mandatory supervisory release. Isn't that correct? Well... So isn't this really a 43-year sentence under your calculations? The significant analysis is that the defendant, under Miller, has some meaningful opportunity to obtain release. And, of course, mandatory supervised release is release. It's just supervised. But if you look at the case of... Well, aren't there cases that say that mandatory supervised release is actually the same as custody? Yes, but that's viewing it from a different context. We're viewing it from a very important context to this person's life. So why shouldn't we add on the mandatory supervised release for purposes of reviewing whether or not this is one of those cases that's on the line or actually maybe three years above the line? Well, again, in Bufford, the Supreme Court has provided this court with guidance. In that case, the defendant had a sentence of a total of 50 years, followed by three years of mandatory supervised release. Yeah, but they didn't have to consider that at all because they decided we're drawing the line at 40 years. But still, in their analysis, they didn't look at 50 plus 3, 53. They looked at 50. So they looked at 40. They said, we're going to try to come up with a bright line. And now here we are arguing about how unclear this line truly is. Well, just to clarify. You think that if there was going to be some kind of number, it wouldn't be 39 and 11 hours and 59 seconds, would you? Well, the court, throughout criminal law, there are some lines that are drawn. And in this particular statute, the line was drawn at a minimum of 40 years. The legislature, according to Bufford, determined that a minimum of 40 years was the same thing as mandatory life imprisonment. And some people might find it not fair if someone falls a day short or a day over. But look at sex crimes laws, age of consent. You know, someone might be a day over, someone might be a day under. There's all types of laws. Look at statute of limitations. They have bright line cutoffs. I mean, do you really think that this is a bright line statement in this decision? Yes, at least when it comes to a sentence that is under 40 years or exactly 40 years where a defendant is eligible for release. The Supreme Court clearly states in that case that it's their holding that a prison sentence of 40 years or less provides some meaningful opportunity for the defendant to obtain release. And in this case, the defendants- But if it's 40 years and a couple of hours, that doesn't really give them a meaningful opportunity for release. Well, that's not the holding that the Supreme Court said. They said 40 years or less. I'm not trying to, you know, capitalize their holding. I'm just saying. In any case, you could say, well, so-and-so missed the statute of limitation by two days, or so-and-so would have been 18 years old in two days, but the criminal law is full of bright lines where a line has to be set. Or this legislature sets it, or the court sets it. I think everybody was waiting and hoping for a bright line. That's what Buffer did in this case. In this case, because the defendant is eligible for release after serving 40 years, and that's what this court should look at, eligibility for release, the earliest possible release date. Of course, we don't know for sure. How did it get changed? Do you know? How did his good time get changed? That I don't know. However- So should he come back? Let's say that it gets changed the other way in a year or so. Should we wait and let him come back then? Would that be a good way to do it? See if he gets 20 days tacked on and then he's back in the ballgame? No, Your Honor, because in that case, well, if he did get the 15 days tacked on, he would still be at 40. No, I said 20. I said 20 days. I didn't say 15. I said, what if he gets 20 tacked on and he's past the 40 now? Well, it depends on the circumstances. If the IDOC did something inappropriately, he would have a remedy. He could file a petition for habeas corpus release, but- Do you think these cases should hinge upon anything that the IDOC has to do as far as their statutory regulations and guidelines? Do they sentence people or is that the judge's job? That's the judge's job. So should we be deciding this based on the whim or whatever of someone or some department that actually has nothing to do with taking away someone's liberty at the initial sentencing hearing? No, Your Honor. The court should only get involved if the IDOC does something inappropriate. It somehow violates the defendant's rights. But, you know, this is all based on speculation, and there's no reason, there's absolutely nothing in the record indicating that defendant is not going to be entitled to all the good time credit that he's entitled to. There's no reason to believe that he will not receive that credit. And for this court to speculate is inappropriate because if that was the case in the case of Patterson, when the Illinois Supreme Court was looking at defendant's sentence, they wouldn't have considered the fact that he was required to serve 85 years. They would have just looked at the total 36 because they would have said, well, how do we know he's going to get that 15 percent good time credit he's entitled to? That's not what they did. They looked at, they subtracted that 15 percent that he was entitled to in considering whether or not his sentence was a de facto life sentence. So if we have the Supreme Court of Illinois subtracting the potential good time credit that a defendant is eligible for, that indicates that the appellate court should do the same. Because they have demonstrated how they go about determining a sentence when a defendant is eligible for a certain amount of good time credit. Would you agree that if the judge in this case had given him 80 years in one day, then you wouldn't be quarreling with any of this, would you? No, Your Honor, because And are those common sentences that you recall last? Like, I'm going to give you 80 years in a day. I'm going to give you 40 years in a day. I'm going to give you 39 years and 11 months and 10 hours so that you don't have a life sentence. I don't know how common those are. However, if Well, they're not common, I can tell you that. They're not common at all. Judges don't give sentences. Federal courts are slightly different. They do things in months, sometimes days. But generally in Illinois, we still use round numbers. Yes. If I believe that under the buffer decision, defendant sentence constituted a de facto life sentence, then my argument would be different. Then I would be arguing under Holman that this court should look at the cold record, and when you look at the record, it indicates that the court did consider defendant's youth and its attendant characteristics. That's exactly what the court did in Holman. However, I don't believe we even need to get to that point because under buffer, I don't think we've met the first criteria that this is a de facto life sentence. Yes. But in the event that somehow this court did reach that conclusion, then I would urge this court to follow Holman and look at the cold record. And you did do that in your briefings. Yes. And the record, it is a substantial sentencing hearing. He did receive an individualized sentencing hearing, and I just want to – But you did review the sentencing issue. Right. I just want to point out that the trial court found, as this court mentioned, that this murder was accompanied by brutal and heinous conduct indicative of wanton cruelty, and this court affirmed that finding on direct appeal. And this is not a case where defendant was a mere lookout or he somehow was in the wrong place at the wrong time, didn't have much time to think about what he was doing. No, this case is really about whether there's a clear line of demarcation so that this person should or should not get a new sentencing hearing. But my position is under buffer. Yeah. He's not entitled to a new sentencing hearing. Yes. And even if you look at the cold record, he's not entitled to a new sentencing hearing because this was a premeditated attack where he had plenty of time to think this over. They planned this a day in advance, maybe earlier. Defendant was the one who obtained the gun. They selected this specific victim. He had a Jaguar. They wanted his car. They wanted his money. They committed a carjacking in his garage. Defendant was the driver. They held him at gunpoint. And then they took him for a long drive. This was not – it was approximately 12 miles. Yeah. The victim wanted to get out. I'm fairly familiar with this case. It's been in this court for 20 years. Right. But when – And I've been the author on every decision that has been issued involving this particular person. Yeah. So I'm – In response to defense counsel's argument about the proportional penalties clause, this is not a situation, not a sentence that shocks the moral sense of the community at all. And I would just add that he could have been sentenced to natural life. The trial judge, sentencing judge, considered defendant's youth and attendant characteristics. And the fact that this sentencing judge imposed a sentence that was far below the minimum – the maximum, I'm sorry, where he would be eligible for release after 40 years, indicates that the sentencing judge did consider the defendant's potential for rehabilitation and did, you know, consider the objective of restoring the defendant to useful citizenship. However, the facts of this case are so heinous that the judge also had to consider the seriousness of the offense and that defendant was an active participant, and he had ample opportunity to bail out of this scheme before the offense, during the offense. Wouldn't the courts be able to consider all those things you've just enunciated if there's another sentence in here? Yes, but my position is that the court already did this. Even though Miller wasn't in effect at the time, when you look at the cold record, the court did everything. The court considered defendant's youth and attendant characteristics. So there – legally, there's no basis to remand this case for new sentencing hearing under buffer, but nevertheless, the record indicates that the defendant did receive an individualized sentencing hearing and the trial court did consider his youth and attendant characteristics. So basically, the trial sentencing court did everything that Miller requires in this case. And – but at the same time, the court couldn't ignore the brutal and heinous conduct here. This victim was 60 years old. He was a successful businessman. He had a family. These were all factors that the court had to consider, and the court did give the defendant a significant grade. The court could have legally sentenced him to natural life. The court didn't do that. The court considered his youth, considered – the court wanted to give the defendant an opportunity for release at the age of 57 so that he could be – rejoin the community. Anything further, Mr. Kelleher? I would just summarize by saying because defendant's sentence doesn't constitute a de facto life sentence, defendant has failed to satisfy the prejudice prong of the cause and prejudice test. Therefore, the trial court's ruling denying defendant leave to file a successive post-conviction petition should be affirmed. All right. Thank you. Thank you. Ms. Hernandez? Thank you. I believe that Mr. Keller said something that's important here, which is that this court should not base its decision on speculation about whether or not Tacky Peacock is going to receive day-for-day credit. He said that nothing tells us that he's not going to receive the entire credit, but at the same time, nothing tells us that he's not going to receive the credit. And I just want to point out some of the minor offenses that could lead to him losing credit that have nothing to do with his rehabilitative potential and may be even committed in an innocuous way. For example, insolence is one of these minor infractions, which means talking, touching, gesturing, or other behavior that harasses, annoys, or shows disrespect. I mean, this could be done without even intending it to be so, and a person may lose up to three months of good time for committing this offense. So there is a possibility he may lose good time credit. He has 20 years to lose good time credit, and this court should not base their decision on speculation as to what that will be. I would also like to address Mr. Keller's argument regarding whether or not the sentencing hearing complied with the Miller requirements. First off, I would say that that was not part of their argument in their original briefs, and I believe it has been forfeited. But even if it hadn't, I think that this case is very different from the case in Holman. The sentencing hearing here was quite lengthy, and there were numerous people that testified on behalf of Tacky Peacock, but in People v. Holman, there was additional information that was considered for the court. There were three psychiatric reports that were provided to the court, and very importantly, the PSI report stated that the defendant had no predilection for rehabilitation based on their conversations with the defendant in the case, and the court specifically found that the defendant in Holman could not be rehabilitated based on all of the information that the court received. And I think that such a finding was not made in this particular case. Not only did the court not have any psychological reports available, there was no recommendation made by the pre-sentence report stating that he could not be rehabilitated. The court did not find that he could not be rehabilitated. And I will reiterate that the court's findings, and what the court actually expressed during the sentencing hearing, is that it deviates from how we know juvenile minds work, and how his participation in this crime was in great part done because of his young age, and because he did not have the maturity or the responsibility to understand the consequences of his actions. And those, oh, and I would also like to point out that in People v. Buffer, the court considered many things. The PSI report, aggravation mitigation, potential substance abuse issues, treatment, potential for rehabilitation, alternative sentencing. The court stated all of this on the record, and that was not sufficient. That was not a sufficient sentencing hearing under Miller. And for those reasons, I would ask that you reverse the circuit court. Thank you. All right. The case was well argued and well briefed, and we will take it under advisement.